UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN LUCAS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 22-cv-677 (RJL) |
| | ) |
| DISTRICT OF COLUMBIA WATER | ) |
| AND SEWER AUTHORITY | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION
September 16, 2024 [Dkt. ## 28, 30]

Employees of D.C. Water & Sewer Authority ("D.C. Water") and their unions claim that D.C. Water's COVID Vaccination Policy ("Policy") violated their federal due process rights and bring suit under 42 U.S.C. § 1983 to recover damages. Cross-motions for summary judgment are ripe. Because plaintiffs fail to provide any evidence of a genuine dispute of material fact that could allow a jury to find a constitutional violation necessary to support their claims, the Court **GRANTS** defendant's motion for summary judgment and **DENIES** plaintiffs' motion for summary judgment.

I.   **BACKGROUND**

Plaintiffs' claims stem from D.C. Water's Policy that they either receive COVID vaccinations or obtain specific exemptions to avoid being placed on leave or facing disciplinary action. *See* Compl. [Dkt. #1]. Plaintiffs are two D.C. Water employees, Jonathan Lucas ("Lucas") and Clarence Ball ("Ball"), and each employee's union, American Federation of Government Employees AFL-CIO Local 631 and Local 872,

1

respectfully. On March 11, 2022, plaintiffs filed their complaint against D.C. Water, as well as a Motion for Temporary Restraining Order ("TRO") [Dkt. #2] and a Motion for Preliminary Injunction [Dkt. #3] seeking to restrain D.C. Water from placing plaintiffs Lucas and Ball on leave. This Court denied both the Motion for TRO, *see* Min. Order (Mar. 22, 2022), and the Motion for Preliminary Injunction, *see* Mem. Op. (June 24, 2022) [Dkt. #20]. Defendant D.C. Water filed a motion for summary judgment on April 7, 2023. *See* Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Dkt. #28]. The next day, plaintiffs filed a motion for summary judgment. *See* Pls.' Mot. for Summ. J. on Liability and a Jury Trial on Damages ("Pls.' Mot.") [Dkt. #30]. These motions are ripe.

## II.    LEGAL STANDARD

When considering cross-motions for summary judgment, the Court must view each motion separately in the light most favorable to the non-movant, determining in accordance with Federal Rule of Civil Procedure 56's standard, whether it can enter judgment for each side. *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 267 F. Supp. 3d 229, 236 (D.D.C. 2017). Pursuant to Rule 56, a court should grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1] A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit." *Id.* "[T]he determination whether a genuine dispute

---

[1] Rule 56 now uses the language "genuine dispute," instead of "genuine issue," but with no change to the summary judgment standard. *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

2

-

concerning a material fact exists is itself a question of law that must be decided by the court. It does not depend upon what either or both of the parties may have thought about the matter." 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2720 (4th ed.); *see also Anderson*, 477 U.S. at 248 ("[T]he substantive law will identify which facts are material."). But where the facts are disputed, the Court must make all justifiable inferences in favor of the non-movant, *see Anderson*, 477 U.S. at 255, except where the non-movant's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it," *Scott v. Harris*, 550 U.S. 372, 380 (2007). While cases involving alleged constitutional violations may require "a determination regarding motive or intentions" that would make summary judgment inappropriate, *Mayfield v. Meese*, 704 F. Supp. 254, 256 n.5 (D.D.C. 1988), summary judgment should be granted if "the record evidence does not reveal any constitutional violations." *Pollard v. District of Columbia*, 191 F. Supp. 3d 58, 68 (D.C. Cir. 2017).

### III.   FACTUAL FINDINGS

The following facts are beyond dispute based on the record in this case. *See* Fed. R. Civ. Proc. 56; *Celotex*, 477 U.S. 317; *Anderson*, 477 U.S. 242; *Scott*, 550 U.S. 372.

#### A.   D.C. Water's Vaccination Policy

On January 20, 2022, D.C. Water implemented the Policy and informed its employees via email. Def.'s Statement of Material Facts As to Which There Is No Genuine Dispute ("Def.'s SUMF") [Dkt. #28-2] ¶ 38; Pls.' Statement of Genuine Issues in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Resp to Def.'s SUMF") [Dkt. #34-1] ¶ 38. The Policy required "[a]ll employees . . . to be fully vaccinated, as defined by the CDC, with an FDA-

approved[,] . . . COVID-19 vaccine regimen." Pls.' Statement of Material Facts in Supp. of Pls.' Mot. for Summ. J. ("Pls.' SUMF") [Dkt. #30-1], Ex. 2 at 1. The Policy alternatively required employees to seek "an approved medical or religious exemption," Pls.' SUMF, Ex. 2 at 1, by February 25, 2022,[2] and explained that failure to comply "may result in being placed on unpaid leave or facing other disciplinary action," *id.*

### B.   Plaintiffs Lucas and Ball

Lucas is a Civil Engineering Technician III at D.C. Water, and his "work assignments include[d] in office assignments and in the field work assignments." Compl. ¶ 9. He is a member of the American Federation of Government Employees, AFL-CIO Local 631. *See* Compl. ¶ 4. In his role, Lucas worked in person with co-workers and the public. Def.'s SUMF, Ex. 3 ("Lucas Dep.") 25–37. Lucas did not submit proof of a vaccination or seek an exemption under the Policy. Def.'s SUMF ¶ 41; Pls.' Resp to Def.'s SUMF ¶ 41.

On March 7, 2022, D.C. Water emailed Local 631 that it would place Lucas on

---

[2] The parties agree that on January 20, 2022, D.C. Water announced that it would implement the Policy and attached the Policy in that email announcement. *See* Def.'s SUMF ¶ 38; Pls.' Resp. to Def.'s SUMF ¶ 38. Citing to that email, defendants assert as a fact not in genuine dispute, "Under the Vaccination Policy, all DC Water employees were required to vaccinate for COVID-19 by February 25, 2022, or certify an approved medical or religious exemption to the Vaccination Policy." Def.'s SUMF ¶ 39. The email states, "**All DC Water employees are required to be fully vaccinated by February 25, 2022,** and weekly testing will only be an option for those with approved medical and/or religious exemptions." Decl. of George E. Spears ("Spears Decl."), Ex. I [Dkt. #28-4] at Bates DC Water 000015–000016. The email also attaches the Policy and a document entitled "FAQs: COVID-19 Vaccination Requirements," which also provides a deadline of February 25. Spears Decl., Ex. I at Bates DC Water 000015–000021. Plaintiffs respond to defendants' SUMF ¶ 39, "Denied, the Vaccination Policy contains no date for employees to be fully vaccinated." Pls.' Resp. to Def.'s. SUMF ¶ 39. It is true that the attached Policy itself does not contain a date by which employees must be vaccinated or exempt; however, D.C. Water clearly provided that date in the email sharing the Policy and in the attached FAQ. Spears Decl., Ex. I at Bates DC Water 000015–000021. Therefore, it is beyond dispute that D.C. Water notified employees of the date by which they needed to comply with the Policy.

unpaid leave[3] on March 8 for failure to comply with the Policy, Spears Decl., Ex. K at Bates DC Water 00007, and in fact, did so, Def.'s SUMF ¶ 43; Pls.' Resp to Def.'s SUMF ¶ 43. Lucas remained on unpaid leave until D.C. Water suspended the Policy on March 28, 2023, and he returned to work on or around April 3 or 4, 2023. D.C. Water's Mem. of L. in Supp. of Its Mot. for Summ. J. ("Def.'s Br.") [Dkt. #28-1] at 5; Pls.' Mem. of P. & A. in Supp. of Pls.' Cross-Mot. for Summ. J. ("Pls.' Opp'n") [Dkt. #34-2] at 2. Lucas requests damages for deprivation of wage and benefits, $200,000 in compensatory damages for extreme emotional distress and diminishment in his standard of living, and attorney's fees and costs. Compl. ¶ 15.

Ball works at D.C. Water as a Water Service Worker, which "require[d] him to service and perform repairs on water service lines" and meant he was "designated as an essential employee." Compl. ¶ 23. Ball is a member of the American Federation of Government Employees, AFL-CIO Local 872. See Compl. ¶ 5. Ball was unable to socially distance at many job sites. See Def.'s SUMF, Ex. 1 ("Ball Dep.") 30.[4] Ball did not submit proof of a vaccination or seek an exemption under the Policy. Def.'s SUMF ¶ 41; Pls.' Resp. to Def.'s SUMF ¶ 41.

On March 7, 2022, D.C. Water notified Local 872 that it would place Ball on unpaid leave[5] on March 8 for failure to comply with the Policy, Spears Decl., Ex. K at Bates DC Water 00009, and did so, Def.'s SUMF ¶ 43; Pls.' Resp to Def.'s SUMF ¶ 43. Following

---

[3] Lucas received an email with that news the same day. Spears Decl., Ex. L; Lucas Dep. 41:16-21.
[4] "Well, we were supposed [to] do the social distancing once we [were] on the job site, but there was no way due to the type of work that we do." Ball. Dep. 30:3-6.
[5] Ball's supervisor told him that he was being placed on unpaid leave for failure to comply with the Policy. Ball Dep. 24:18-20.

suspension of the Policy, Ball returned to work on April 10, 2023. Def.'s Br. 5; Pls.' Opp'n 2. Ball requests damages for deprivation of wage and benefits, $200,000 in compensatory damages for extreme emotional distress and diminishment in his standard of living, and attorney's fees and costs. Compl. ¶ 28.

D.C. Water is "an independent authority of the District government" created by Congress and responsible for "water distribution and sewage collection, treatment, and disposal systems and services." D.C. Code § 34-2202.02(a)-(c). D.C. Water has "a separate legal existence within the District government," *id.*, and is a proper defendant under § 1983, *see Norair Eng'g Corp. v. D.C. Water & Sewer Auth.*, 2020 WL 2541935, at *11 (D.D.C. Feb. 26, 2020).

## IV. ANALYSIS

Plaintiffs bring suit under 42 U.S.C. § 1983, which requires showing that a defendant deprived them of a right protected by federal law or the Constitution and that the defendant was acting under the color of state law. *Miller v. Marriott Int'l LLC*, 378 F. Supp. 3d 1, 9 (D.D.C 2019), *aff'd*, 2019 WL 6492628 (D.C. Cir. Nov. 15, 2019). Here, plaintiffs allege constitutional violations, and "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, plaintiffs claim substantive due process violations.[6] *See* Compl.

---

[6] Plaintiffs do not specify whether they are bringing substantive or procedural due process claims, but the Court has "interpret[ed] their argument as grounded in substantive due process" because of "their invocations of the 'right to liberty,' PI Mot. at 8, and interference with plaintiffs' 'individual personal decisions,' Pl. PI Mem. at 5." Mem. Op. 10. The Court has also noted that plaintiffs "fail to address necessary elements of a procedural due process claim" and "concede that they have not exhausted the processes available to them to contest D.C. Water's decision to place them on administrative leave." *Id.*

Plaintiffs can only bring a due process claim here under the Fifth Amendment, not the Fourteenth Amendment. *See Butera v. District of Columbia*, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001); *Thomas v. District of Columbia*, No. 21-cv-00584, 2022 WL 2817855, at *3 n.1 (D.D.C. July 19, 2022) (quoting *id.*). To establish a substantive due process claim, plaintiffs must first "allege[] the deprivation of an actual constitutional right." *Butera*, 235 F.3d at 646 (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)). Then, plaintiffs must show defendant's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 651 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Plaintiffs claim the Policy deprived them of their "right[s] to make personal decisions on [their] medical treatment." Compl. ¶¶ 10, 24.

### A.   The Policy Faces Rational Basis Review

When a right at issue is *not* a fundamental right, defendant's actions are "subject only to rational basis scrutiny." *2910 Georgia Ave. LLC v. District of Columbia*, 234 F. Supp. 3d 281, 312 (D.D.C. 2017) (quoting *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 712 (D.C. Cir. 2007)).[7] To withstand rational basis review, defendant's actions must only have a "rational relationship to a legitimate state interest." *Abigail All.*, 495 F.3d at 712. Rational basis review is a

---

at 10 n.6. Therefore, the only claims for consideration at summary judgment are plaintiffs' substantive due process claims.

[7] If the right at issue is a fundamental right, courts assess a defendant's actions "under a strict scrutiny standard," meaning any actions infringing upon that right "would be justified only if the infringement is narrowly tailored to serve a compelling state interest." *Hutchins v. District of Columbia*, 188 F.3d 531, 536 (D.C. Cir. 1999). But a right is only deemed fundamental if it is enumerated in the Bill of Rights or "objectively, deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quoting *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion).

"highly deferential . . . standard," *Dixon v. District of Columbia*, 666 F.3d 1337, 1342 (D.C. Cir. 2011), and courts "accord . . . challenged policies a strong presumption of validity," *Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1156 (D.C. Cir. 2004). To survive rational basis review, a party need only show "any reasonably conceivable state of facts that could provide a rational basis" for the challenged policy. *Cannon v. District of Columbia*, 717 F.3d 200, 207 (D.C. Cir. 2013) (quoting *Hettinga v. United States*, 677 F.3d 471, 478 (D.C. Cir. 2012)).

The Policy faces rational basis review here because plaintiffs cannot show that it infringes on a fundamental right. They claim that the Policy violated their "right[s] to make personal decisions on [their] medical treatment." Compl. ¶¶ 10, 24. In *Jacobson v. Massachusetts*, the Supreme Court established that vaccine mandates enacted to "protect the public health . . . [and] the public safety" do not implicate fundamental rights. 197 U.S. 11, 25–33 (1905). Although *Jacobson* "pre-dated the modern tiers of scrutiny," the Court has essentially established that rational basis scrutiny should apply to challenged vaccine mandates. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 23–24 (2020) (Gorsuch, J., concurring). Our Circuit has not directly addressed whether vaccine mandates implicate a fundamental right, but federal courts post-*Jacobson* have consistently held that they do not and should thus meet rational basis review.[8] Therefore, in the absence

---

[8] *E.g.*, *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021) ("Both this Court and the Supreme Court have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional."); *Klaassen v. Trs. of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("Given *Jacobson* . . . there can't be a constitutional problem with vaccination against SARS-CoV-2." (citation omitted)); *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 844 (E.D. Va. 2022) (stating that "federal courts have consistently held that vaccine mandates do not implicate a fundamental right" (quoting *Valdez*

of a controlling precedent or an overarching reason to the contrary, defendant's Policy should only face rational basis scrutiny.

### B.  The Policy Passes Rational Basis Review

The Policy passes rational basis scrutiny because plaintiffs fail to prove that it "bear[s] no rational relationship to a legitimate state interest." *Abigail All.*, 495 F.3d at 712. In fact, there is ample evidence that D.C. Water implemented the Policy "in an effort to maintain a healthy, safe and well working environment" amidst a global pandemic. Def.'s Br. 3. "Prevent[ing] the spread of contagious diseases" is undeniably a legitimate state interest. *See Jacobson*, 197 U.S. at 35; *Diocese of Brooklyn*, 592 U.S. at 18 (majority opinion) (explaining that "stemming the spread of COVID–19 is unquestionably a compelling interest" that can satisfy even strict scrutiny when narrowly tailored). The Policy shows a rational relationship between that legitimate state interest of preventing the spread of COVID-19 and the inability of D.C. Water's employees, such as Lucas and Ball, to consistently socially distance while performing their duties. *See* Lucas Dep. 25–37; Ball Dep. 30. Further, some D.C. Water employees, including Lucas, needed to "regularly" enter people's homes to perform their duties. Lucas Dep. 29:3-21. Because the Policy passes rational basis review, plaintiffs fail to demonstrate a constitutional violation.

### C.  Defendants Are Entitled to Summary Judgment

Because plaintiffs cannot show any constitutional violation, they cannot succeed on

---

v. *Grisham*, 559 F. Supp. 3d 1161, 1173 (D.N.M. 2021), *aff'd*, 2022 WL 2129071 (10th Cir. June 14, 2022))); *Williams v. Brown*, 567 F. Supp. 3d 1213, 1226 (D. Or. 2021) ("conclud[ing] that there is no fundamental right under the Constitution to refuse vaccination and that rational basis review applies to Plaintiffs' due process challenge"); *Norris v. Stanley*, 567 F. Supp. 3d 818, 821 (W.D. Mich. 2021) ("[T]here is no fundamental right to decline a vaccination.").

their own summary judgment motion or survive defendant's summary judgment motion. *See Butera*, 235 F.3d at 646.

## V. Conclusion

For the above-mentioned reasons, defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED**.

*[signature]*
RICHARD J. LEON
United States District Judge